# EXHIBIT A



Much Shelist, P.C.
Attorneys at Law

191 N. Wacker Drive
Suite 1800
Chicago, IL 60606

312.521.2000
muchlaw.com

June 8, 2023

Steven P Blonder
Principal
Direct Dial: 312.521.2402
sblonder@muchlaw.com

Velsicol Chemical LLC
Velsicol Chemical Holding Corporation
Resnovae Holding Corp.
c/o Tim Horn
10400 W Higgins Rd, Ste 303
Rosemont, IL 60018

Re: Restructuring Matters

Dear Tim:

Thank you for engaging Much Shelist, P.C. (the "firm," "we," "our," or "us") to serve as legal counsel to Velsicol Chemical LLC ("Velsicol Chemical"), Velsicol Chemical Holding Corporation ("Velsicol Holding") and Resnovae Holding Corp (Resnovae, and, collectively with Velsicol Chemical and Velsicol Holding, the "company" or "you," with references to "your" referring to the company and not to you personally). This letter sets out the terms of our engagement. Additional terms are contained in the attached statement entitled "General Provisions Regarding Engagements." They are to be considered part of our agreement. To the extent there are any discrepancies, this letter controls.

**SCOPE.** We have been engaged to provide counsel and represent the Company in matters related to a potential restructuring and related governance issues and will provide legal services reasonably required in connection with such matters, including the preparation and potential filing of a chapter 11 bankruptcy petition for each of the Companies. We will endeavor to inform you of material developments and seek to consult with the company's authorized representatives on all significant decisions. Any material change in the nature or scope of our engagement is subject to our mutual agreement. If the nature or scope of our engagement changes, the terms set out in this letter will apply to any new or expanded engagement unless we enter into a further agreement with respect thereto. I encourage you at any time to contact me or any other person at Much working on your matter.

As you are aware, we currently represent Velsicol Chemical in various matters (the "Other Matters"). Except for the Advanced Payment Retainer as described below, nothing in this engagement letter will affect those Other Matters.

An International
member of

AllyLaw

13787441_1



Tim Horn
June 8, 2023
Page 2

---

**IDENTITY OF CLIENT.** It is understood that we are only representing Velsicol Chemical, Velsicol Holding and Resnovae. in this engagement. Unless otherwise set forth in this letter, we will not be representing the directors, officers, employees, members, shareholders, or other constituents of Company. You have agreed that our representation the Company in this engagement does not give rise to any attorney-client relationship between the firm and any affiliate or partner of the Company. Accordingly, representation of the Company in this engagement will not give rise to any conflict of interest in the event other clients of the firm are or become adverse to any such affiliate or partner.

**REPRESENTATION OF OTHER CLIENTS.** As you can appreciate, the firm represents many other companies and individuals throughout the United States and elsewhere. It is possible that during the time we are representing you, some of our present or future clients will have disputes, transactions, or other matters that involve you. For example, subject to the applicable provisions of the U.S. Bankruptcy Code we may represent a party in a bankruptcy case that may have interests that are materially adverse to you. Or our present or future clients that have had or may hereafter have business dealings with you may now be or hereafter become involved in disputes, including litigation, against you.

You have agreed that, even though we undertake to represent you in this engagement, we may continue to represent or may in the future represent existing or new clients in any matter that is not substantially related to our work for you unless the interests of such clients in those other matters are directly adverse. We agree that we will not undertake any such representation if you have provided us with confidential information that is material to the subject matter of the representation.

We are satisfied that our representation of other parties whose interests may be adverse to your interests in matters not substantially related will not affect our ability to represent your interests in this engagement. Our ethical rules require that we obtain your consent to such representation in advance. You may, of course, wish to consult other counsel before giving this consent.

**STAFFING & FEES.** I will oversee handling of the matter and Much Shelist's relationship with you and Jonathan Friedland and Jeffrey Schwartz are also expected to play a significant role. Our fees will be based on the hourly billing rate charged by each person working on your matter, as adjusted from time to time. My hourly billing rate is $720 and Jonathan's and Jeff's is $685. Other attorneys and/or paralegals will most likely work on your matter to provide services when needed. In general our attorneys' billing rates generally range from $370 to $8!0. Hourly rates for paralegals range from paralegals $195 to $˝90. Note fees are distinct from "disbursements and charges" (as defined below). If you fail to make payment to Much Shelist when due, Much Shelist reserves the right to withdraw from the representation. You should never hesitate to contact me at any time with any comments or questions concerning our services.

**ADVANCED PAYMENT RETAINER.** We require an initial retainer of $200,000. Given your current financial situation and pending litigation, we require that the initial retainer and any additional retainer (i.e. any increase or replenishment) (collectively, the "retainer") be treated as an <u>advance payment retainer</u> as a condition to our accepting this engagement. The advanced

13787441_1



Tim Horn
June 8, 2023
Page 3

---

payment retainer will apply not only to this new matter but will also apply to any current open matters you have with us.

An advance payment retainer is different from and less common than a security retainer, which would be deposited in our client trust account, and which would remain company property subject to our security interest until used to pay for our services. Regardless of how we choose to apply the retainer, it will become our property upon payment and will be deposited in our firm's general account, not in a separate client trust account for you. If the firm has not earned all the amounts that you paid us, the excess will be returned to you upon completion of our engagement.

The firm believes that treatment of the funds as an advance payment retainer is in your best interest because it ensures that funds will be available to permit you at least some level of legal representation. At the firm's discretion, either (i) we will deem some or all of the advance payment retainer as representing advance payment for work performed and expenses incurred currently; or (ii) we will hold the advance payment retainer as funds for work we will provide in the future and require you to pay our monthly invoices currently. Although we are required to tell you that you have the option to have the retainer held as a security retainer to be applied as described in clause (ii) of the previous sentence, we are unwilling to represent you without receiving an advance payment retainer, because of your current financial situation..

We also anticipate requesting replenishments and, depending on the work we anticipate performing, additions to the retainer from you from time to time, to ensure that the firm, at all times, is a net debtor of the company. In other words, the amount of A/R the company owes to the firm *plus* the amount of money that will be owed to the firm on account of existing work in process must always be less than the amount of our retainer. If we do not receive any additional retainer amount requested, we will suspend work on your matter until payment is made and withdraw from further representation. This is necessary to make sure that the firm is never a creditor of the company. Accordingly, each month we will apply the retainer to the outstanding bill and you will be required to replenish the retainer within 10 days of receipt of our bill. The retainer is certainly not an estimate of what we expect our total fees and charges to be, nor a cap under this engagement. If the full amount of the retainer is not timely paid, or additional retainer is not timely paid as requested, we reserve the right, in our discretion, to terminate the engagement.

**DOCUMENT RETENTION.** During the course of the representation, Much Shelist shall maintain a file on your behalf. The file may include material you have given to us in connection with the representation, as well as other material such as pleadings, transcripts, exhibits, reports, contracts, wills, certificates and other documents as are determined by Much Shelist to be reasonably necessary to the representation ("Your File"). Your File shall be and shall remain your property. Much Shelist also may include in the file its attorney work product, mental impressions, and notes (collectively "Much Shelist Work Product"). Unless otherwise agreed to between us, the Much Shelist Work Product shall be and shall remain the property of Much Shelist.

At the termination of the representation and for a period of seven (7) years thereafter, and provided there are no outstanding unpaid statements for fees and charges owed by you to Much Shelist, you shall have the right on request to take possession of Your File but not the Much

13787441_1



Tim Horn
June 8, 2023
Page 4

---

Shelist Work Product. In such event, Much Shelist at its expense may make and retain copies of all or portions of Your File. If you do not request possession of Your File within such seven (7) year period, Much Shelist will have no further responsibility for the retention and maintenance of Your File and may at its option dispose of all or parts of Your File without further notice to you.

**DISBURSEMENTS AND CHARGES.** In addition to our fees, we will be entitled to payment for disbursements as set forth below and in the attached "General Provisions Regarding Engagements."

**INSURANCE.** It is your, the client's, responsibility, to notify applicable liability and other insurance carriers of the claims made against you or of any circumstances (such as personal injury or property damage) that could provide the basis for a claim. You acknowledge this responsibility and agree to hold us harmless from any loss of insurance or any failure to tender to or notify or pursue your carriers.

**LIEN.** By signing this letter, you grant us a lien on all claims or causes of action that are the subject of our representation under this agreement. Our lien will be for any sums owed to us at the conclusion of our services. The lien will attach to any recovery you may obtain, whether by arbitration award, judgment, settlement, or otherwise.

**DISPUTE RESOLUTION.** At the instance of either you or us, all disputes regarding the amount of our legal fees must be submitted to the Chicago Bar Association Fee Dispute Resolution Committee. We both agree to be bound by the results of such resolution.

In addition, also at the instance of either you or us, all other disputes arising out of our representation must be submitted to mandatory arbitration in Chicago, Illinois, before the American Arbitration Association in accordance with the rules of that association. This includes claims for legal malpractice. The arbitrator will have the right to order any relief that a court could order in connection with the same matter.

By signing this agreement and agreeing to mandatory arbitration, you acknowledge that: (i) both of us are giving up the right to have disputes determined in court by a judge or a jury, (ii) both of us are giving up the right to appeal the arbitrator's decision, and (iii) in arbitration the right to discovery can be severely restricted.

**CONFIDENTIALITY OF IN-FIRM COMMUNICATIONS.** In the course of our representation of you, it may be necessary for our lawyers to analyze or address their professional duties or responsibilities, or those of the Firm, and to consult with the firm's General Counsel or a member of the Firm's Professional Liability/Ethics Committee with respect to those duties or responsibilities. To the extent those consultations involve our duties, obligations or responsibilities to you, it is possible that a conflict of interest might be deemed to exist as between our lawyers or the Firm and you. As a condition of this engagement, you waive any conflict of interest that might be deemed to arise out of any such consultations. You further agree that these consultations are protected from disclosure by the firm's attorney-client privilege and that you will not seek to discover or inquire into them. Of course, nothing in this paragraph shall diminish or



Tim Horn
June 8, 2023
Page 5

otherwise affect our obligation to keep you informed of material developments in your matter, including any conclusions arising out of such consultations to the extent that they affect your interests.

**TERMINATION OF REPRESENTATION.** Unless previously terminated, our representation in this or any other matter will terminate with our final statement for services rendered in connection with those matters.

**CHANGES IN THE LAW.** Finally, as you are aware, the law is an evolving process and changes occur from time to time. This is true with respect to those areas of law involved in your matter. As a result, once we have completed your matter, subsequent changes in the law may affect in whole or in part what we accomplished. We cannot, however, continually monitor such changes as they may apply to your particular situation; therefore, we must specifically disclaim any duty to do so once we have completed our engagement.

**COMMUNICATION BY EMAIL.** The firm at times communicates with clients through email. The communication may relate to a particular matter or it may provide information about our firm or legal matters that may be of general interest. You agree that the firm can send you this material by electronic mail, among other means. You also agree that we may communicate with you on matters related to this representation by e-mail on an unencrypted basis.

**CLIENT APPROVAL.** If these terms are acceptable, please sign a copy of this letter where indicated and return it in the enclosed envelope. Until we receive the signed copy, our representation will not begin, and we will not be obligated to perform any work on your behalf. Unless we make a different agreement in writing, this agreement will govern all services we perform for you in the future.

Please review this letter carefully. Unless you promptly advise us to the contrary, we will rely on our understanding that this letter reflects the terms of our engagement. To avoid doubt, we ask that you formally accept these terms by signing and returning a copy of this letter to me.

We are not obligated to begin providing services until we receive a signed copy of this letter and the initial retainer. We may, in our discretion, begin providing services to you at your spoken direction. Even if you do not sign this letter, you must pay us for any services we have performed at your direction and related expenses. Although we have set out the terms of our representation in the form of a letter, this letter is a binding legal contract.

13787441_1



Tim Horn
June 8, 2023
Page 6

---

Thank you for your trust in us. We look forward to a mutually satisfactory and productive relationship with you in serving as your legal counsel.

Very truly yours,

MUCH SHELIST, P.C.

*[signature]*

Steven T. Blonder

APPROVED AND ACCEPTED THIS

_____ DAY OF _____, 2023

VELSICOL CHEMICAL, LLC

BY: *[signature: Tim Horn]*
    SIGNATURE

BY: *Tim Horn*
    PRINT NAME

TITLE: *President*

VELSICOL CHEMICAL HOLDING CORPORATION

BY: *[signature: Tim Horn]*
    SIGNATURE

BY: *Tim Horn*
    PRINT NAME

TITLE: *President*

13787441_1



Tim Horn
June 8, 2023
Page 7

RESNOVAE HOLDING CORPORATION

BY: _____
SIGNATURE

BY: ____Tim Horn_____
PRINT NAME

TITLE: ____President_____

## GENERAL PROVISIONS REGARDING ENGAGEMENTS

Except as modified by the accompanying engagement letter, the following provisions will apply to the relationship between the firm and its clients:

1. **LEGAL SERVICES NOT COVERED.** We will not provide any legal services other than those specified in the engagement letter unless we first consult with you and obtain your authorization.

For example, for matters involving litigation, this agreement does not obligate us to file a notice of appeal or respond to a notice of appeal. In the event you want to retain us to appeal or to respond to an appeal, and we are willing to represent you, we will enter into a new agreement at that time for that purpose. Similarly, unless a new agreement is made, we will also not be required to do any of the following (this list is not all-inclusive and is merely illustrative):

   a. Handle any matter except those incidental to and necessarily included with the subject matter addressed in the engagement letter;

   b. Provide any services after a matter is disposed of at the trial level;

   c. Provide any services after a transaction is closed; or

   d. Aid in the enforcement of any judgment or order of a trial court, including collecting or perpetuating judgments.

2. **EXPECTATIONS.** In order to enable us to effectively render our services, clients are expected to disclose fully and accurately all facts and keep us apprised of all developments relating to the matter. By retaining us, clients agree to cooperate fully and to be available to attend meetings, discovery proceedings and conferences, hearings, and other proceedings.

3. **OUTCOME.** Either at the commencement or during the course of our representation, we may express opinions concerning this engagement and the results that might be anticipated. Since the result of any matter cannot be predicted, however, it is understood that we cannot and do not make any promises or guarantees concerning the outcome of a client's matter. Any such comments are expressions of opinion only, based on information available at the time, and we cannot guaranty their accuracy. They should not be construed by you as a promise or guarantee. Nor should anything in this letter be construed as such a promise or guarantee.

4. **CONFLICTS.** Because we represent numerous clients on a number of matters, we have performed a formal conflicts check within our office. If we proceed, it will be because, based on our initial review, we have found no apparent conflicts. We may also be representing more than one client in this matter. In that regard, we have determined that our multiple representation will not adversely affect our representation, although it is possible that our clients' individual interests may in the future become adverse or otherwise differ. For example, one or more may wish to settle on terms that are not acceptable to the others; one may be offered

13787441_1

settlement terms which differ from those offered to the others; subsequent discovery could show that one or another may have claims against one or more of the others.

In any situation, of course, if we become aware of a conflict, we will discuss it with the client and specifically reserve the right to withdraw from any representation if we feel we cannot properly represent a client's interests. Likewise, should we at any time determine that our representation of our client's interests conflicts with our representation or relationship with any other client, we reserve the right, after discussion with the clients but at our sole discretion, to withdraw from the representation of any matter.

You may, of course, wish to consult other counsel about such potential conflicts.

5. **FEES.** Fees for services rendered will be based on the reasonable value of those services as determined in accordance with the Illinois Rules of Professional Conduct. Such fees will be based primarily on hourly billing rates; billing rates differ, depending generally on the attorney's experience and years of practice, and the firm adjusts these rates from time to time. Time for which a client will be charged will include but will not be limited to telephone and office conferences with a client, other counsel, witnesses, consultants, court personnel, and others; conferences among our legal personnel; factual investigations; legal research; responding to clients' requests to provide information to their auditors; drafting of letters, pleadings, briefs and other documents; negotiating such documents; travel time; waiting time in court; and time in depositions and other discovery proceedings.

In an effort to reduce legal fees, the firm uses legal assistants. Time devoted by legal assistants to client matters (including secretaries doing the work of legal assistants) is charged at hourly billing rates, which also are subject to adjustment from time to time by the firm.

It is the firm's policy to request a retainer before rendering legal services to a new client or on a new matter.

6. **DISBURSEMENTS AND CHARGES.** In addition to fees, the firm is entitled to payment for disbursements incurred in performing services such as messenger and delivery service, computerized research and search fees, "e-discovery" services, corporation services, travel (including mileage, parking, airfare, lodging, meals, and ground transportation), court costs, and filing fees. Most of these charges represent the firm's out-of-pocket costs. Some of these items include an allocation of overhead costs associated with the particular item and thus are charged at more than the firm's direct costs. Others represent a combination of both out-of-pocket costs and an allocation of overhead. Such charges are adjusted from time to time.

7. **ESTIMATES.** Although the firm may from time to time, for a client's convenience, furnish estimates or budgets of fees or disbursements, these are estimates only and are subject to unforeseen circumstances. By their very nature, they are inexact and should not be considered guarantees of any kind.

8. **BILLING PRACTICES.** Fees and disbursements are generally billed monthly, i.e., shortly after the close of the month in which the services are rendered. Payment is due within thirty days of receipt of the statement. However, given the situation, we may elect to bill more frequently than monthly. And, as explained in the letter, we intend to maintain a positive retainer

balance in an amount to be determined in our discretion and, thus, may bill more frequently than monthly. The firm reserves the right to postpone or defer providing additional services or to discontinue its representation if billed amounts are not paid when due.

Whenever possible, disbursements will be billed directly to the client. When that is not possible, they will be paid by the firm and then submitted to the client for reimbursement.

9. **TERMINATION OF SERVICES.** A client may terminate the firm's services at any time and for any reason whatsoever, upon notice to the firm. Termination of representation does not, however, relieve the client of its obligation to pay the firm's fees and disbursements.

The firm in turn reserves the right to withdraw from its representation if, among other things, the client fails to honor the terms of the engagement letter, the client fails to cooperate or fails to follow the firm's advice on a material matter, or there are any facts that would, in the firm's view, render its continuing representation unlawful or unethical. If the firm elects to withdraw, the client will take all steps necessary to free the firm of any obligation to perform further, including the execution of any documents necessary to complete the withdrawal. The firm will give the client reasonable notice of its intent to withdraw considering the circumstances of each matter, so that the client has time to arrange alternative representation.

When our services conclude, the firm will have no further legal obligation to perform services on the client's behalf. At that time, the firm will be entitled to all unpaid charges owed for disbursements or work performed prior to the date of withdrawal.

10. **CONCLUSION OF REPRESENTATION.** Unless previously terminated, our representation of the company in each matter will terminate upon our sending you our final statement for services rendered in that matter.

11. **CHANGES IN LAW.** The law is an evolving process and changes occur from time to time. As a result, once the firm has completed a matter, subsequent changes in the law may affect in whole or in part what was accomplished. The firm cannot, however, continually monitor such changes as they may apply to a particular situation; therefore, the firm must specifically disclaim any duty to do so once it has completed the engagement.

12. **PRIVACY NOTICE.** In accordance with a recent federal law, the firm makes the following disclosure. In the course of providing legal advice and services, we may collect information from the client, information about the client's transactions with the firm or with other parties, or information from a consumer reporting agency.

The ethics rules governing attorneys' conduct impose upon the firm higher standards of confidentiality than those required by the law. Our clients' interactions with the firm are protected by the attorney-client privilege and professional ethical standards requiring confidentiality. All information the firm receives from and about the client is held in complete confidence and will not be disclosed to third parties, except with the client's consent or as may be required by law. Because the firm maintains physical and electronic files concerning its professional services, it implements physical and electronic security measures to protect your privacy and safeguard your confidential information.

13787441_1

13. **VIRUS PROTECTION AND ELECTRONIC COMMUNICATIONS.** During the course of our engagement, we will likely exchange electronic versions of documents and emails with you using commercially available software. Unfortunately, the technology community is occasionally victimized by viruses and similar destructive electronic programs. We take these issues seriously and have therefore invested in software whose purpose is to identify and reject emails, documents, and other attachments containing known viruses.

By utilizing this virus scanning software, our system might occasionally reject a communication that you send to us. Similarly, we in turn might send you something that is rejected by your system. We believe these occurrences will be infrequent and are to be expected within the ordinary course of business.

In addition, we cannot guarantee that our communications and documents will always be free from viruses. Occasionally, a virus might escape and go undetected as it is passed from system to system. Although we believe that our virus protection measures are adequate, we make no warranty that our documents will be virus free at all times.

Accordingly, we ask that you inform us immediately in the event a virus enters your system via an electronic means originating from our firm. Through cooperative efforts, we can minimize any disruption to our communications.

As you know, all forms of communication are subject to interception and accidental transmissions, so confidentiality cannot be guaranteed. If there is any form of communication (such as email) that you do not wish us to use, please so advise us promptly in writing so that we can work with you on mutually acceptable procedures. Without some other written agreement, this will control, and you will be deemed to have consented to our use of available forms of communication, including but not limited to e-mail and facsimile transmission.

13149693_1

4

13787441_1