IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| VELSICOL CHEMICAL LLC, *et al.* | ) | No. 23-12544 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. David D. Cleary |
| | ) | |

**DISTRICT OF COLUMBIA'S REPLY IN SUPPORT OF ITS MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ORDER AUTHORIZING DISCOVERY RELATING TO DEBTORS AND RELATED ENTITIES AND INDIVIDUALS**

The District of Columbia ("the District") hereby files this Reply in Support of its motion ("Motion") for the entry of an order authorizing discovery relating to Velsicol Chemical LLC ("Velsicol Chemical"), Velsicol Chemical Holdings Corporation ("Velsicol Holdings"), and Resnovae Holdings Corporation ("Resnovae") (collectively, the "Debtors"), as well as related individuals and entities, pursuant to Fed. R. Bankr. P. 2004 ("Rule 2004"):

1. The Debtors' Objection to the District's Motion seeks to raise issues not ripe at this stage of the proceeding, requesting the Court examine and rule on whether each specific document request falls within the scope of discovery under Federal Rule of Civil Procedure 26. *See In re Sheetz*, 452 B.R. 746, 748–49 (Bankr. N.D. Ind. 2011) (Rule 2004 "contemplates only that the court may order the examination of any entity… This process has the advantage of allowing the court to avoid the appearance of approving any details of the examination, such as when, where, etc. Only if there is a dispute on such issues does the court need to become involved.").

2. Moreover, the Debtors make baseless accusations and unprofessional statements in an attempt to detract from the merits of the District's motion. Their reliance on vitriolic adjectives

and admission of millions of dollars of transfers to shareholders demonstrate the necessity for the Districts' requested examinations.

3.      The Debtors were the only Parties that filed objections to the District's Motion. None of the shareholders filed objections. Arsenal Capital Partners, which was also served with the Motion, has not appeared and objected. Additionally, two other creditors have filed responses in support of the District's Motion. *See* Dkt. Nos. 106 and 107.

4.      Contrary to the Debtors' Objection, the District has more than met its burden to establish good cause for the requested Rule 2004 examinations.

### A. The District Has Provided Good Cause for the Requested Examinations.

5.      The District has provided more than enough detail for this Court to determine that there is good cause for the requested examinations of the Debtors, shareholders, and Arsenal Capital Partners. *See* Motion at 2; Supp. Memo. at 2–4. The District has pointed to transactions and financial records related to assets and financial transactions of the Debtors for which the Debtors, shareholders, and Arsenal Capital are very likely to have information. A Rule 2004 examination "is quite broad, relating to just about anything that deals with the debtor's actions, assets, liabilities or financial affairs, its right to a discharge, or any matter affecting the administration of the bankruptcy estate." *In re Sheetz*, 452 B.R. at 748. The request "can be as simple as where are the keys to the filing cabinet or as complex as what happened to the money." *Id.* The District's examination falls squarely within the latter, focused on information regarding the disposition of assets the Debtors sold and financial arrangements and transactions between the Debtors, Arsenal Capital Partners, and the shareholders.

6.      The Debtors admit to millions of dollars in cash distributions to the shareholders, in 2018 and 2020. *See* Obj. at 9 n.2 (admitting distributions to shareholders of a total $5 million in

2

2018 and 2020); *see also* Dkt. No. 110 (Debtors' Proposed Plan) at 49 n.1 (admitting a distribution to shareholders in December 2020 of $1.5 million, taken from proceeds of the sale of real property owned by the Debtors in Tennessee). Examination of the shareholders to understand the details of these distributions is clearly warranted under these circumstances.

7. Moreover, several Arsenal entities are listed as creditors of Resnovae. *In Re Resnovae Holdings Corp.*, No. 23-12552 (Bankr. N.D. Ill. Oct. 16, 2023) (original Resnovae Matter), Dkt. No. 17 at 22. At the Section 341 meeting on October 30, 2023, the US Trustee asked about why the Arsenal entities were listed as creditors. The Debtors' designee stated that it was based on potential obligations undertaken as part of the 2012 sales agreement between Arsenal Capital Partners and the now shareholders of Resnovae.[1] Additionally, through independent research on S&P Capital IQ, the District found information indicating that Jeffrey Brian Kovach, Board Director/Trustee, co-Chief Investment Officer, and co-Managing Partner of Arsenal Capital Partners, continued to act in an executive role with Velsicol Chemical after the sale was completed. Examination of Arsenal Capital Partners, who did not file an objection, is also, therefore, warranted under these circumstances.

8. In arguing against good cause, the Debtors' Objection relies on generalized and unsupported statements of counsel to either answer the District's requests or explain why requests are not relevant. These unverified statements are not a substitute for the District's requested examination. For example, the Debtors' Objection devotes significant time to the "ultimate

---

[1] The Debtors imply that the District is not entitled to any Rule 2004 examination because "the District failed to ask a single question during the extensive 341 meeting conducted by the US Trustee." Obj. at 2. This is inaccurate. The District was entitled to attend the 341 meeting and was not required to ask questions at that meeting in order to seek an examination under Rule 2004.

3

disposition of the proceeds from the sale of the over $28 million in assets from 2018 to 2022." Obj. at 3. The District takes strong issue with the Debtors' characterization of statements in the District's Motion and Supplemental Memorandum as false or misleading. This is not accurate. The District does not know the disposition of the sales proceeds listed on the Debtors' tax returns. As the Debtors appear to agree, the total of sales proceeds listed on their taxes from 2018 to 2022 does total approximately $28 million dollars. Obj. at 8 n.1.

9. As an explanation for what happened to the money (and in what is appears to be an attempted partial answer to the District's requests), the Debtors state in their brief that "[t]o the extent Velsicol needed operating funds, it would transfer funds out of the investment account into its operating account" and that "[i]n a typical investment account like the Pershing Account, stocks, mutual funds, bonds, money market accounts and treasury bills are often sold…The proceeds from the sale are then typically reinvested back into other stocks, mutual funds, bonds, money market accounts and treasury bills." Obj. at 7–9. The Debtors also indicate that this can happen multiple times over the course of one year, resulting in multiple countings of the same assets as sales proceeds. *Id.* at 9.

10. It is not accurate to say that by looking at the information on the 1099-B forms the District would have insight into what the Debtors did with the sales proceeds listed, including whether the funds were moved to the Debtors' operational account, reinvested, or whether there were in fact multiple sales and purchases of the same assets in a year, resulting in sales proceeds that reflect far more than what is in the account. The District does not know the total amount in the Pershing Account from 2018 to 2022. That information and what happened with the proceeds are part of the subject matter of the examination the District is seeking to take.

4

11. Notably, in attempting to answer the District's discovery request in its Objection, Debtors' Counsel gives a nod to the relevancy of the question, cutting against their lack of good cause argument. Furthermore, Debtors' Counsel provides no evidence to support these statements. Finally, even if supported, Debtors' *Counsel's* unverified answers in briefing are not a substitute for an examination of the Debtors themselves.

12. The Debtors' claim that the District brought this motion merely to harass the Debtors is likewise unfounded and untrue. *See* Obj. at 2. The District's examination clearly is related to these proceedings and seeks information related to the Debtors' actions, assets, liabilities or financial affairs, right to a discharge, or any matter affecting the administration of the bankruptcy estate. The District filed this motion for the proper purpose of furthering its interest as a creditor of the Debtors, and indeed other creditors support the District's position. This is not a situation where the requested examination has no relation to the debtor's affairs or no effect on the administration of the estate. *See In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985).

13. Additionally, the Debtors volunteering to provide some requested information— again an admission to the relevancy of the District's request—does not eliminate the need for the District's requested Rule 2004 examination. The District is willing to work with the Debtors, cooperate on the setting of schedules for exams, and discuss the specific requests for documents.[2]

---

[2] Contrary to the Debtors' representations to the Court, the District has made numerous good faith efforts to work with the Debtors' Counsel to resolve their objections to the District's Motion without success. In particular, the District strongly disputes Debtors' Counsel's representation at the hearing on December 27 that the District's Counsel misrepresented "either intentionally or out of ignorance" what issues remained after our meet and confer. At the meet and confer, the District's Counsel invited the Debtors' Counsel to send out an email summarizing the remaining issues, which the Debtors' Counsel agreed to provide. After the Debtors' Counsel failed to follow up, the District's Counsel sent an email prior to filing the Supplemental Memorandum setting forth the two remaining issues the District identified at the meet and confer. The Debtors' Counsel did not respond to that email. Then, after the Debtors incorrectly told the Court that District's Counsel

The District, however, should not have to accept the Debtors' offer to voluntarily provide a cherry-picked selection of the information requested as a replacement for the requested exams. *See In re Kelton*, 389 B.R. 812, 820 (Bankr. S.D. Ga. 2008) ("the mere fact that Debtor produced some of the documents to the independent auditor does not relieve Debtor from providing the UST with the requested documentation.").

14. For the foregoing reasons, the District has met its burden to establish good cause for the Rule 2004 examinations, and the Debtors' offer to provide only some of the requested information does not moot the request for examinations.

### B. The District's Requests for Information Related to the 2010 and 2012 Sales Are Warranted Under Rule 2004.

15. The District has provided ample information to this Court to demonstrate why both (1) the sale of Genovique Specialties Corp. in 2010 and the ultimate disposition of the proceeds from that sale, and (2) the 2012 sale of Velsicol Chemical from Arsenal Capital Partners are related to the Debtors' assets, liabilities, and financial affairs. *See supra*; Motion at 2; and Supp. Memo. at 2–4. Regardless of whether those specific transactions fall within whatever statute of limitation might apply in a potential future adversary proceeding, they do fall within the scope of examination under Rule 2004 because they relate to the origins of funds and assets existing or recently transferred by the Debtors.³ *See In Re Sheehan*, 625 B.R. 72, 76 (Bankr. N.D. Ill. 2021)

---

misrepresented the remaining issues, the District's Counsel again emailed Debtors' Counsel and asked for them to provide in writing what specific issues were discussed at the meet and confer that remained at issue that the District did not raise with the Court. The Debtors' Counsel also never responded to that email, and instead filed their Objection which essentially asks the Court to deny the District's request in whole.

³ While the Debtors spend substantial time arguing that *nullum tempus* does not apply, the Debtors provide no insight on what "look back period" they believe would apply at this time. Without application of the "golden creditor" rule at least four years would apply under 740 ILCS 160/10, with the possibility of discovery tolling for a claim under 740 ILCS 160/5(a)(1). The

6

(highlighting that discovery under Rule 2004 is broader than discovery under an adversarial proceeding).

16. Moreover, even if the Court needed to decide the "look back" period applicable at this stage, at a minimum a ten-year period would apply because the IRS is a creditor, and the District maintains that no statute of limitations would apply to claims it could bring under D.C. Code §§ 28-3104 and 3105. *See* Supp. Memo at 5–6. Contrary to the Debtors' assertions, both the District and the IRS are listed as creditors on the schedules provided by the Debtors and are creditors under the Bankruptcy Code. *See In Re Resnovae*, Dkt. 17 at 20; Dkt. 54 at 37; 11 U.S.C. § 101(10). The fact that neither the District nor the IRS has filed a proof of claim is irrelevant at this time since the governmental claim deadline does not pass until March 19, 2024.

17. Additionally, cases interpreting Delaware's fraudulent conveyance law and the application of *nullum tempus* do not displace the established law in the District of Columbia.[4] The District agrees that under D.C. Code § 28-3101 the District would fall within the definition of a "person" and "creditor" and therefore be entitled to bring an action under D.C. Code §§ 28-3104 and 3105. That, however, does not necessarily mean that the statute of limitation under D.C. Code § 28-3109 automatically applies to claims made by the District. D.C. Code § 28-3109 does not expressly state it applies to claims by the District. Additionally, it does not even refer to "person" as defined in D.C. Code § 28-3101—the definition of which the Debtor is relying on to support

---

District has provided ample evidence of the connection between the 2010 and 2012 sales and transactions within the prior four-year period to warrant examination under Rule 2004.

[4] It is also worth noting that the decision of the Delaware Bankruptcy Court in *Miller v. Fallas*, No. 20-5775 (Bankr. D. Del. 2022) cited by Debtors was prefaced on a finding that the statute of limitation under Delaware's fraudulent conveyance statute was a statute of repose. *See* Obj. Ex. D-1 at 21. That same reasoning may not be directly applicable to the statute of limitation for at least claims brought under D.C. Code § 28-3104(a)(1), which allows for discovery tolling. D.C. Code § 28-3109(1).

that the statute of limitations "expressly" applies to the District. District of Columbia Courts have found that the District is treated differently than persons who may bring claims under common law or a particular statute "[w]here the District acquires a right of action directly related to its duty to perform a service to the public." *Solid Rock Church, Disciples of Christ v. Friendship Pub. Charter Sch., Inc.*, 925 A.2d 554, 560 (D.C. 2007) (quoting *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 407 (D.C. 1989)); *see also* Order, *District of Columbia v. D.C. Housing Auth.* ("*DCHA Decision*"), Case No. 2022-CA-002667B (D.C. Super. Ct. Oct. 21, 2022) (attached hereto as Ex. A) (concluding that the District was exempt from statutes of limitation under the District of Columbia Human Rights Act and the Consumer Protection Procedures Act).

18. In considering whether the government function at issue has the requisite public-service purpose, District of Columbia Courts consider the following factors: the scope and severity of the problem, the cross-section of the population affected, and any other considerations. *See DCHA Decision,* at 5–6. In this case, the District's claim arose out of its environmental enforcement action to protect the natural resources and waterways of the District and to recover monetary damages to address contamination caused by Velsicol Chemical. *See* Dkt. No. 110 at 6 (describing the District's claims).

19. Natural resources, rivers, and streams are classic public resources, which the District Government has a responsibility to protect. *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 639 (D.C. 2015) ("This jurisdiction… has accepted the principle of *nullum tempus* . . . by which neither laches nor statutes of limitations will constitute a defense to suit by the sovereign in the enforcement of a public right."); *Owens-Corning Fiberglas Corp.*, 572 A.2d at 404 (similar holding but in the context of environmental contamination on public lands); D.C. Code § 1-301.81(a)(1) (Office of the Attorney General "shall be responsible for upholding the public

interest"). Thus, the enforcement of environmental statutes and recovery of funds for remediation of these contaminated public resources fall squarely within the District's government function, and therefore *nullum tempus* would be applied to exempt the District from the statute of limitations in D.C. Code § 28-3109.[5]

### C. The Benefits of the District's 2004 Motion to Creditors and the Estate Are Not Outweighed by Burdens on the Debtors or Shareholders.

20. The District has identified millions of dollars in assets that were transferred to shareholders and additional sales proceeds that are unaccounted for. The District's Rule 2004 Motion seeks to obtain information regarding these transfers and assets to potentially increase the estate to the benefit of creditors. The amount at issue is particularly significant here, where the Debtors currently seek to fund their proposed bankruptcy plan with three years of discretionary income, totaling a mere $1,366,000.

21. Rather than acting for the benefit of the estate and creditors, Debtors are prioritizing and shielding their shareholders. The benefits of the District's examination far outweigh the burden on Debtors to collect the documents requested.

22. The District therefore respectfully requests that the Court grant the District's Motion.

---

[5] The Debtors likewise misstate the District's statements regarding the D.C. Superior Court's rulings in the underlying environmental litigation. The Court did deny Velsicol's Motion to Dismiss on the basis of laches. *See* Obj., Ex. C2 at 67. The Court did not deny the motion to strike the statute of limitations defense based on a finding that *nullum tempus* did not apply, but on procedural bases. *Id.* Importantly, in the discussion of *nullum tempus*, the Court was clear that the issue it was considering was whether to apply a limited exemption to a general rule that statutes of limitations and laches would not be applied to the District. Obj., Ex. C1 at 16–20.

Dated:  January 12, 2024　　　　　　　　Respectfully submitted,

**THE DISTRICT OF COLUMBIA**

By:  */s/ Kevin H. Morse*
Kevin H. Morse (ARDC #6297244)
CLARK HILL PLC
130 East Randolph Street, Suite 3900
Chicago, Illinois 60601-6317
Tel: (312) 985-5595
Fax: (312) 985-5984
kmorse@clarkhill.com

- and -

Shantel Chapple Knowlton*
EDELSON PC
350 N. LaSalle Street, Suite 1400
Chicago, Illinois 60654
Tel: (312) 589-6370
schappleknowlton@edelson.com

*Admitted *pro hac vice*
*Attorneys for the District of Columbia*

## **CERTIFICATE OF SERVICE**

I, Kevin H. Morse, an attorney, certify that I served a copy of this reply to be served on each party listed below via the method indicated on January 12, 2024.

*/s/ Kevin H. Morse*

**CM/ECF:**

**BMC Group, Inc**
tfeil@bmcgroup.com
evalles@bmcgroup.com
lruppaner@bmcgroup.com

**Quinette Bonds**
bonds.quinette@pbgc.gov

**Matthew Brash**
mbrash@newpointadvisors.us
I003@ecfcbis.com

**Eric J. Breithaupt**
ebreithaupt@joneswalden.com
jwdistribution@joneswalden.com

**Shantel Chapple Knowlton**
schappleknowlton@edelson.com

**Scott D. Fink**
ecfnil@weltman.com

**Robert W Glantz**
rglantz@muchlaw.com
ccafcules@muchlaw.com

**Leon Jones**
ljones@joneswalden.com
jwdistribution@joneswalden.com

**Patrick S Layng**
USTPRegion11.ES.ECF@usdoj.gov

**Kevin H Morse**
kmorse@clarkhill.com
blambert@clarkhill.com

**Daniel Robertson**
robertson.daniel@pbgc.gov

**Jeffrey M Schwartz**
jschwartz@muchshelist.com
wballinger@muchlaw.com

**Andrea Wong**
wong.andrea@pbgc.gov

**U.S. Mail:**

Velsicol Chemical LLC
10400 W. Higgins Rd., Ste. 303
Rosemont, IL 60018

Velsicol Chemical Holdings Corporation
10400 W. Higgins Rd., Ste. 303
Rosemont, IL 60018

Resnovae Holdings Corporation
10400 W. Higgins Rd., Ste. 303
Rosemont, IL 60018

Timothy Horn
Velsicol Chemical LLC, President
Resnovae Holdings Corporation, Shareholder
10400 W. Higgins Rd., Ste. 303
Rosemont, IL 60018

Dennis T. Leu
Resnovae Holdings Corporation, Board Member/Officer
10400 W. Higgins Rd., Ste. 303
Rosemont, IL 60018

Sherman Friedman
Velsicol Chemical LLC, VP of Communications
Resnovae Holdings Corporation, Shareholder
10400 W. Higgins Rd., Ste. 303
Rosemont, IL 60018

George Harvell
Velsicol Chemical LLC, VP of Environmental
Resnovae Holdings Corporation, Shareholder
10400 W. Higgins Rd., Ste. 303
Rosemont, IL 60018

John Bonsor
Velsicol Chemical LLC, VP of Supply Chain
Resnovae Holdings Corporation, Shareholder
10400 W. Higgins Rd., Ste. 303
Rosemont, IL 60018

Arsenal Capital Partners
100 Park Avenue, 31st Floor

New York, NY 10017

13