# EXHIBIT A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| **DISTRICT OF COLUMBIA,**<br>　　　　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**DISTRICT OF COLUMBIA HOUSING AUTHORITY,**<br>　　　　　　　　　**Defendant.** | Case No. 2022 CA 002667 B<br><br>Judge Juliet J. McKenna<br><br>Next Event: Mediation TBD |

## ORDER

　　　Pending before the Court is Defendant District of Columbia Housing Authority's Motion to Dismiss Amended Complaint, filed on September 23, 2022; Plaintiff District of Columbia's Opposition, filed on October 7, 2022; and Defendant's Reply, filed on October 14, 2022. Parties appeared for an Initial Scheduling Conference on October 21, 2022, at which time the Court heard additional brief argument on the Motion and Opposition thereto. For the reasons stated below, the Defendant's Motion to Dismiss is denied.

### Background Information

　　　The D.C. Office of the Attorney General, on behalf of Plaintiff District of Columbia ("Plaintiff" or "District"), is "responsible for upholding the public interest," D.C. Code § 1-301.81(a)(1), and is expressly authorized to enforce the District of Columbia Human Rights Act and the Consumer Protection Procedures Act. *See* D.C. Code § 2-1403.16a; D.C. § 28-3909; *see also* Amend. Compl. at ¶ 16. The Defendant District of Columbia Housing Authority ("Defendant" or "DCHA"), "an independent authority of the District government," is "responsible for providing decent, safe, and sanitary dwellings, and related facilities, for persons and families of low-and moderate-income in the District." D.C. Code § 6-202.

On September 12, 2022, the Plaintiff filed an Amended Complaint against the Defendant, alleging disability discrimination and failure to accommodate (Count I), in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01, *et seq.*; and unlawful, false, deceptive, and misleading trade practices (Counts II and III) in violation of the Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904. *See generally* Amend. Compl.[1]

As one of the largest landlords in the District, the Defendant serves approximately 50,000 District residents, owns and manages more than 8,000 public housing units across more than 52 properties, and has responsibility for and financial interests in thousands of additional units in mixed-income properties throughout the District. *Id.* at ¶¶ 14, 16. "As with any landlord, the DCHRA requires Defendant to provide reasonable accommodations to its tenants with disabilities to allow them the opportunity to use and enjoy their housing equal to that of nondisabled residents." *Id.* at ¶ 3 (citing D.C. Code § 2-1402.21(d)(3)(B)).

According to the Plaintiff, hundreds of District residents with disabilities in need of housing assistance submit disability related accommodation requests to the Defendant for consideration. Although the DCHA often approves these accommodation requests in a timely manner, Plaintiff alleges that tenants wait years for these accommodations to be implemented; some "wait[ing] more than a decade to receive their approved accommodation." Amend. Compl. at ¶¶ 5–6, 18–28.[2] This is the case even when the tenant's disability is a direct result of the

---

[1] The original Complaint was filed on June 16, 2022.
[2] One example alleged in the Complaint details a tenant who was approved for a wheelchair-accessible unit in January 2017. *See* Amend. Compl. at ¶ 5. The tenant lived on the fourth floor of an apartment building without an elevator and therefore was forced to rely on others to carry her up and down the stairs to leave the apartment for medical appointments and daily activities. *Id.* A few months after her accommodation request was approved, Plaintiff alleges that the Defendant informed the tenant that she was at the top of the waitlist for an accessible unit. *Id.* Five years after her accommodation was approved by the Defendant, the tenant died, without ever receiving the approved accommodation. *Id.*

Defendant's mismanagement. *Id.* at ¶ 26 (citing to one tenant's five year wait for an approved accommodation for asthma and allergies caused by mold exposure in a DCHA provided apartment).

Additionally, the Plaintiff alleges that the Defendant fails to communicate with tenants awaiting accommodations concerning the expected timeframe for accommodations to be implemented or the possibility of alternative accommodations that may be available to a tenant whose approved accommodation is not immediately available. *Id.* at ¶¶ 29–35. The Amended Complaint further states that the Defendant's process failures have led to tenants being offered units unfit for habitation, erroneous or premature removal of tenants from the housing waitlist, and the loss of critical records of approved accommodations requests. *Id.* at ¶ 36–41.

The Plaintiff claims that these undue delays in implementing approved reasonable accommodations constitute a pattern and practice of discrimination in violation of the DCHRA, and that the Defendant's misrepresentations and failure to communicate material information to tenants and future tenants regarding the housing accommodations violates the CPPA. Amend. Compl. at ¶¶ 7, 54, 55.

On September 23, 2022, the Defendant filed a Motion to Dismiss the Complaint arguing as a threshold matter that Plaintiff's claims fail because they are time-barred by the DCHRA and CPPA's statutes of limitations. *See generally* Mot. to Dismiss at 6–7, 9. The Defendant further argues that Count I should be dismissed because Plaintiff did not plead any facts to allege that the Defendant's failure to implement reasonable accommodations was "wholly or partially for a discriminatory reason," and because Plaintiff failed to allege that DCHA refused to make reasonable accommodations. *Id.* at 3–6; *Id.* (citing D.C. Code §2-1402.21(a)). With respect to Count II, the Defendant contends that the CPPA claim fails because the DCHA is not a

3

"merchant" as defined by the D.C. Code, and similarly, failure to timely implement an approved accommodation is not an unlawful "trade practice" under the CPPA. *See id.* at 7–9; Reply to Opp. at 4–5; *see generally* D.C. Code § 28-3901.  Lastly, the Defendant moves to dismiss Count III on the grounds that the Defendant's statements about the housing it provides do not constitute "misrepresentations" because the housing services provided by the DCHA are not "trade practices" related to "consumer goods or services" as defined by the CPPA.

**Legal Standard**

To determine whether a claim survives a motion to dismiss, a court must conduct a two-pronged inquiry, examining whether the claim includes well-pled factual allegations and whether such allegations plausibly entitle the Plaintiff to relief. *See Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  The applicable standard of review requires the trial court to "accept[ ] the [factual] allegations in the complaint as true and view[ ] all facts and draw[ ] all reasonable inferences in favor of the plaintiff." *Tingling-Clemmons v. District of Columbia*, 133 A.3d 241, 245, (D.C. 2016) (citing *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C. 2011)).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Dismissal pursuant to D.C. Superior Court Civil Rule 12(b)(6) is appropriate only if it is "beyond doubt that the Plaintiff can prove no set of facts in support of a claim which would entitle [the Plaintiff] to relief." *See Atkins v. Inuds. Telecomm. Ass'n*, 660 A.2d 885, 887 (D.C.

4

1995) (quoting *Owens v. Tiber Island Condo. Ass'n*, 373 A.2d 890, 893 (D.C. 1977) (citation omitted); *see also Carlyle Investment Management, LLC v. Ace American Insurance, Co.*, 131 A.3d 886, 894 (D.C. 2016) ("A complaint should not be dismissed because a court does not believe that a plaintiff will prevail on its claim; indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."). The claim must be construed in the light most favorable to the non-moving party.

**Analysis**

Claims brought pursuant to the DCHRA are typically subject to a one-year statute of limitations. *See Paul v. Howard Univ.,* 754 A.2d 297, 311–12 (D.C. 2000). Because the CPPA does not expressly set forth a statute of limitations, the three-year timeframe set forth in D.C. Code § 12-301(a)(8) for claims "for which a limitation is not otherwise specifically prescribed" would typically apply. However, D.C. Code § 12-301(b) explicitly states that this statutory provision does not apply to actions brought by the District of Columbia government. This exemption is consistent with the doctrine of "*nullum tempus occurrit regi*—time does not run against the king." *See* Mot. To Dismiss at 6–7, 9; Reply to Opp. at 1. This doctrine applies where the District "sues to enforce public rights." *See D.C. Water & Sewer Auth. v. Delon Hampton & Assocs.*, 851 A.2d 410, 414 (D.C. 2004); *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 403, 407 (D.C. 1989) (holding that the District is "enforc[ing] [a] public right[]" when it sues "to vindicate an overwhelming public interest," during which "the District enjoys municipal immunity from the running of time").

"Claims are exempt from the statute of limitations if they arise 'while in the performance of public functions.'" *Wash. Metro. Area Transit Auth. v. Ark Union Station, Inc.*, 268 F. Supp. 3d 196, 209 (D.D.C 2017). Examples of public functions include the provision of education,

5

unemployment relief, tax collection, the maintenance and operation of public transit systems, the treatment of people suffering from communicable diseases, and the removal of asbestos from public buildings. *See id* at 208–10. In determining the extent to which a government function has the requisite public-service purpose, a court should consider "the scope and severity of the problem." *D.C. v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 410 (D.C. 1989) (finding that courts must evaluate each case "on its own merits, taking into account the scope and severity of the problem, the cross-section of the population affected, and any other considerations"). Here, the Court finds that the provision of public housing assistance and housing accommodations for vulnerable individuals with disabilities is a "public function" in which the public has a significant interest. For these reasons, the Plaintiff's claims are not time-barred by the DCHRA and CPPA's statute of limitations.

1. **Plaintiff has Stated a Claim for Failure to Provide Reasonable Accommodations Under the DCHRA.**

The DCHRA prohibits discrimination based on a person's disability. D.C. Code § 2-1402.21(d).[3] To establish disability discrimination under the DCHRA for failure to provide a reasonable accommodation, the plaintiff must demonstrate that: (1) the tenant suffered from a handicap or (disability), (2) the landlord knew or should have known of the disability, (3) an accommodation of the disability may be necessary to afford the tenant an equal opportunity to use and enjoy their apartment, (4) the tenant requested a reasonable accommodation, and (5) the landlord refused to grant a reasonable accommodation. *See Douglas v. Kriegsfeld Corp.*, 884

---

[3] D.C. Courts interpreting the DCHRA look to analogous federal statutes such as the Americans with Disabilities Act ("ADA") and Fair Housing Act ("FHA") for guidance, given the similar analytical frameworks that apply. *See generally Hodges v. District of Columbia*, 172 F. Supp. 3d 271, 276 (D.D.C. 2016) (applying the ADA analytical standard to DCHRA claims); *see also Douglas v. Kriegsfeld Corp.*, 884 A.2d 1109, 1129 (D.C. 2005)

A.2d 1109, 1129 (D.C. 2005) (en banc); *District of Columbia v. Delwin Realty, LLC*, 2022 D.C. Super. LEXIS 44, *1.[4]

The Court finds that the Plaintiff has sufficiently pled the requisite elements of this claim in order to survive Defendant's Motion to Dismiss. First, the Plaintiff in this action represents the numerous District residents and public housing tenants who suffer from a disability. *See* Amend. Compl. ¶¶ 2, 5–6, 24–27. Second, tenants in need of disability-related housing accommodations must apply to the Defendant for these accommodations, thereby putting the DCHA on notice of the tenants' disabilities. Third, disabilities such as cerebral palsy, amputated limbs, paralysis, and severe and permanent injuries requiring wheelchairs for mobility, are disabilities which the Defendant has acknowledged require accommodations to "afford the tenant an equal opportunity to use and enjoy [their] apartments," as evidenced by the DCHA's approval of these accommodation requests. *Id.* at ¶¶ 24–26. Fourth, hundreds of public housing tenants have requested disability related housing accommodations from the DCHA, many of whom the DCHA has approved and put on a waitlist for accommodations. *See generally* Mot. to Dismiss; Opp. to Mot. to Dismiss at 4–5.

The Defendant contends that the Plaintiff fails to establish the fifth element of a discrimination claim under the DCHRA because it does not allege that the Defendant DCHA "refused to make reasonable accommodations." *See* Mot. to Dismiss at 5. Instead, the Plaintiff alleges that the extensive, sometimes decade-long delay in implementing the approved

---

[4] The Defendant originally argued that Count I should be dismissed due to Plaintiff's failure to allege a discriminatory intent or motive per D.C. Code §2-1402.21(a). However, Plaintiff has alleged a DCHRA violation for failure to accommodate under § 2-1402.21(d)(3), which does not require that Plaintiff allege a discriminatory intent. *See generally Drasek v. Burwell*, 121 F. Supp. 3d 143, 155 (D.D.C. 2015) (stating that "refusal to provide a reasonable accommodation when one is requested violates the []Act regardless of whether the employer harbors animus or otherwise intends to discriminate against the employee."); *Floyd v. Lee*, 968 F. Supp 2d 308, 220 (D.D.C. 2013) (denying motion to dismiss ADA claim, finding that "[a]n employee need not prove discriminatory intent to establish a failure-to-accommodate claim").

7

accommodations constitutes a "constructive denial" of the requests for reasonable accommodations as required by the DCHRA. *See* Opp. To Mot. to Dismiss at 5 (citing *Welsh v. McNeil*, 162 A.3d 135, 156 (D.C. 2017) (failure to make a timely accommodation determination "amounts to constructive denial of a requested accommodation, 'as an indeterminate delay has the same effect as an outright denial'")).

Considering all the facts pled in the Complaint, including the allegations of significant delays in providing approved accommodations to disabled tenants, in conjunction with the Defendant's failure to communicate the expected timeline for accommodations to be implemented or alternative available accommodations, the Plaintiff has alleged sufficient facts to support a claim that the Defendant's conduct amounts to a refusal to implement or grant a reasonable accommodation. *See Douglas v. Kriegsfeld Corp.*, 884 A.2d 1109, 1129 (D.C. 2005) (en banc). For these reasons, the Court finds that the Plaintiff has pled sufficient facts to establish a plausible claim under the DCHRA to survive the Defendant's Motion to Dismiss as to Count I.

**2. Plaintiff has Stated a Claim for Unlawful Trade Practices Under the CPPA.**

The CPPA is a broad remedial statute aimed at "assur[ing] that a just mechanism exists to remedy all improper trade practices." D.C. Code § 28-3901(b)(1), (c). It is a violation of the CPPA for a person or merchant to engage in an unfair or deceptive trade practice. *See* D.C. Code § 28-3904; D.C. Code § 28-3909. A merchant, as defined by the CPPA, is "a person,[5] whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services . . . " *See* D.C. Code § 28-3901(a)(3). Pursuant to the CPPA, a trade practice is "any

---

[5] The D.C. Code defines a "person" as "an individual, firm, corporation, partnership, cooperative, association, or any other organization, legal entity, or group of individuals however organized[.]" D.C. Code § 28-3901(a)(1).

8

act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services." *See* D.C. Code § 28-3901(a)(6). Goods or services, as defined in this Act, means "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process," including "real estate transactions, and consumer services of all types." D.C. Code § 28-3901(a)(7). Although the CPPA generally applies to commercial transactions, the Office of the Attorney General is explicitly authorized to apply the CPPA to landlord-tenant relations. *See* D.C. Code § 28-3909(d).

As defined by statute and set forth in the Amended Complaint, the DCHA was created by the D.C. Council to "provid[e] decent, safe, and sanitary dwellings, and related facilities, for persons and families of low-and moderate-income in the District," and was established, as "an independent authority of the District government," "a corporate body," with "a legal existence separate from the District government." *See* D.C. Code § 6-202(a), (b). The Court finds the facts pled sufficient to support Plaintiff's assertion that the Defendant falls within the definition of a "merchant" under the CPPA. Additionally, the Plaintiff has alleged that the District tenants utilizing public housing services are "consumers," and the "provision of rental housing constitutes a [']consumer transaction.[']" *See* Amend. Compl. at ¶¶ 51–53; D.C. Code § 28-3901(a)(2), (a)(6)–(7).

The Plaintiff asserts that the DCHA's failure to timely implement reasonable housing accommodations, along with other deficiencies in communicating with District tenants, reviewing accommodation applications, and providing information to tenants about this process, constitutes an unlawful "trade practice" as contemplated by the CPPA. At this stage of the litigation, the Plaintiff has proffered sufficient facts to support a finding that the Defendant's

9

actions fall within the definition of a "trade practice," as acts that "create, alter, . . . furnish, make available, provide information about, or . . . solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services," to include real estate transactions. D.C. Code § 28-3901(a)(6). Thus, the Court finds that at this stage in the litigation, the Plaintiff has pled sufficient facts to establish a plausible claim of unlawful trade practices under the CPPA. As such, the Motion to Dismiss Count II is denied.

### 3. Plaintiff has Stated a Claim for False, Deceptive, and Misleading Acts or Practices Under the CPPA

A claim for a violation of the CPPA for false, deceptive, and misleading practices can be established in numerous ways.[6] *See generally* D.C. Code § 28-3904. At the Motion to Dismiss stage, a claim must only establish that the challenged practice "could be reasonably interpreted by a consumer as misleading." *District of Columbia v. Facebook*, 2019 WL 7212642, at 13 (D.C. Super. Ct. May 31, 2019).

District residents in need of public housing and disability accommodations rely on the Defendant DCHA for the necessary information regarding housing services and housing accommodations in the District. The Plaintiff alleges that the Defendant made material misrepresentations and failed to disclose material information regarding the quality of housing it offers to District tenants. *See* Amend. Compl. at ¶ 55. Specifically, Plaintiff cites to Defendant's misrepresentations that it provides "'quality affordable housing,' when in fact much of its housing is inaccessible to tenants with disabilities or [is] otherwise unfit to live in;" and that it prioritizes providing housing to tenants with disabilities, "when in fact DCHA did not have

---

[6] D.C. Code § 28-304 lists a number of "unfair or deceptive trade practices," including that it is unlawful to "represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another" (D.C. Code § 28-3904(d)); "misrepresent as to a material fact which has a tendency to mislead" (D.C. Code § 28-3904(e)); "fail to state a material fact if such failure tends to mislead" (D.C. Code § 28-3904(f)); "advertise or offer goods or services without supplying reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition which has no tendency to mislead" (D.C. Code § 28-3904(i)).

10

sufficient housing stock for its existing tenants, much less new tenants."[7] Amend. Compl. at ¶¶ 6, 14, 21. Additionally, the Plaintiff alleges the Defendant failed to disclose material information, including the significant wait time for tenants to receive housing accommodations, the lack of availability of accessible housing, the volume of District residents waiting for DCHA housing, and the possible availability of interim accommodations. *See* Amend. Compl. at ¶ 55.

Considering the facts alleged in the Complaint as true and drawing all reasonable inferences therefrom in favor of the Plaintiff, the Plaintiff has pled sufficient facts to support a plausible claim that the Defendant's statements and failure to disclose relevant information are material and may have a tendency to mislead a reasonable consumer, in violation of the CPPA. For these reasons, Count III of the Plaintiff's Complaint survives the Defendant's Motion to Dismiss.

Wherefore it is this 21st day of October, 2022, hereby

**ORDERED,** that the Defendant's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Juliet J. McKenna<br>
Associate Judge

**Copies to**:
**Counsel of Record via CaseFileXpress.**

---

[7] The DCHA website claims that "[a]lthough there is a waiting list for housing in the District of Columbia, preference is given to persons with mobility impairments[.]" Amend. Compl. at ¶ 21.

11