**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 23 B 12544 |
| | ) | |
| VELSICOL CHEMICAL LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Judge David D. Cleary |

**ORDER GRANTING MOTION OF THE DISTRICT OF COLUMBIA PURSUANT TO FED. R. BANKR. P. 2004 FOR ORDER AUTHORIZING DISCOVERY RELATING TO DEBTORS AND RELATED ENTITIES AND INDIVIDUALS**

This matter comes before the court on the motion of the District of Columbia ("District") pursuant to Fed. R. Bankr. P. 2004 for an order authorizing discovery relating to Velsicol Chemical, LLC ("Velsicol"), Velsicol Chemical Holdings Corporation ("Holdings") and Resnovae Holdings Corporation ("Resnovae") (collectively, "Debtors") and related entities and individuals ("2004 Motion"). Transportation Insurance Company, Continental Casualty Company, The Continental Insurance Company and Pharmacia, LLC filed responses to the 2004 Motion. The District filed a supplemental memorandum ("Supplement"), and the court entered a briefing schedule. Pursuant to that schedule, Debtors filed an objection ("Objection") and the District filed a reply ("Reply"). After the parties completed briefing, the court took the 2004 Motion under advisement.

Having heard the arguments of the parties and reviewed the papers submitted, the court will grant the 2004 Motion as described below.

**I.      BACKGROUND**

According to the Supplement, in 2010 Arsenal Capital Partners ("Arsenal"), which was then the owner of Velsicol Chemical Corporation, sold a business to Eastman Chemical Company for $160 million ("Eastman Sale"). The District believes that a substantial amount of the proceeds from the Eastman Sale were deposited into an investment account managed by

Pershing Advisor Solutions, LLC ("Pershing Account"). It contends that there is a discrepancy between the amount of sales proceeds Velsicol reported receiving, and the amount currently listed in the Pershing Account on Velsicol's Schedule B. The District also seeks to investigate proceeds received by Resnovae from the sale of investment assets, and cash distributions to its shareholders.

In 2012, ownership of Velsicol was transferred from Arsenal to the management team of Velsicol Chemical Corporation, now the shareholders of Resnovae ("2012 Sale"). The District alleges that it has information that tends to show that Arsenal management continued to be involved in the management of Velsicol after the 2012 Sale, and that there may be an ongoing financial relationship between the Resnovae shareholders and Arsenal.

Shortly before the Debtors filed for relief under the Bankruptcy Code, Velsicol produced some financial documentation to the District during discovery in a case pending in the Superior Court of the District of Columbia ("DC Superior Court"). *District of Columbia v. Velsicol Chemical, LLC*, Case No. 2022 CAB 004711. As part of its 2004 Motion requests, the District intends to question the Debtors about that documentation and to obtain additional relevant documents.

Debtors filed for relief under chapter 11 of the Bankruptcy Code on September 21, 2023. About three months later, the District filed the 2004 Motion. According to the 2004 Motion, Matthew Brash, the subchapter V trustee in each of the Debtors' cases ("Trustee"), requested to be present at any Rule 2004 examinations and has not expressed any opposition to the requested discovery. Several creditors filed responses to the 2004 Motion. Transportation Insurance Company, Continental Casualty Company, The Continental Insurance Company and Pharmacia,

2

LLC each asked for authorization to appear, ask questions and request documents in connection with any examination of witnesses.

At the initial court hearing on this matter, the District reported that counsel had a conversation and scheduled a meeting to attempt to resolve the Debtors' objections to the District's requests. Although the parties were unable to come to an agreement, the District represented to the court at the next hearing that they had narrowed their disputes to two issues: (1) whether the District may depose the shareholders of Resnovae; and (2) what look-back period applies to the 2004 Motion. Debtors disputed this characterization of the result of their discussions, so the court will rule on the 2004 Motion as presented.

## II.   CONTENTIONS OF THE PARTIES

### A. Supplement

In its Supplement, the District asserts that the Eastman Sale, the disposition of the proceeds from that sale and the relationship between Arsenal and the Resnovae shareholders are related to the acts, conduct, or property or to the liabilities and financial condition of the Debtors. Arsenal and the five shareholders of Resnovae may have information relevant to both the Eastman Sale and the transfer of Velsicol's ownership.

To the extent that any examinations of the shareholders would be redundant to the examinations of the Debtors, the District offered to depose the Debtors first. The shareholder examinations could be cancelled if unnecessary.

As for the relevant look-back period, the District asserts that because the Eastman Sale took place in 2010, all documentation related to that sale and going forward should be within the scope of a Rule 2004 examination. The District contends that under the law in the District of Columbia there is no statute of limitations applicable to its right to bring a fraudulent conveyance

3

action. Therefore, it is appropriate for the District to seek discovery relating to transactions dating back to 2010, and it modified its discovery requests to clearly limit the examinations to events from 2010 forward. Even if there were an applicable statute of limitations, the District points out that the Internal Revenue Service is a creditor of the Debtors. It argues that the Trustee could step into the Service's ten-year statute of limitations. *See Fogel v. Specialty Industries II, LLC (In re Palmieri)*, 651 B.R. 349, 357 (Bankr. N.D. Ill. 2023) ("[T]he Court holds that the applicable statute of limitations here is ten years from the date of assessment of the relevant taxes.").

### B. Objection

Debtors contend that there is no "good cause" for most of the District's discovery requests, arguing that the 2004 Motion does not "provide a reasonable basis as to why such discovery would be relevant to the Debtors' bankruptcy estates[.]" Objection, ¶ 19. The alleged absence of a limitations period does not make the requests relevant. They also assert that the examinations of the shareholders are unnecessary because relevant information can be obtained from the Debtors.

Debtors argue that since the Pershing Account was not opened until at least two years after the Eastman Sale, any link between the account and the sale "is a fiction." *Id.*, ¶ 22. Furthermore, the District's argument that funds are missing from the Pershing Account is based either on a misunderstanding or an intentional misrepresentation. The Debtors dispute the District's version of these transactions, including in the Objection a chart that purports to show the sales for certain years from the Pershing Account, the cost basis for those investments, and the realized gain or loss. Debtors attached as Exhibit B a list of documents that they agreed to produce, which includes copies of the Pershing Account statements.

4

Debtors also contend that the District has failed to assert any relevance for certain document requests, arguing that the document production is "essentially limitless" and will impose a significant burden on them and their employees. *Id.*, ¶ 34. They argue that the requests "are not likely to produce information leading to any causes of action that are not otherwise barred by an applicable statute of limitations" and ask that the requests be "appropriately tailored[.]" *Id.*, ¶ 35.

Finally, Debtors assert that the District's argument that there is no applicable statute of limitations is "fatally flawed[.]" *Id.*, ¶ 37.

**C. Reply**

The District first argues that it has provided good cause for the examinations of the Debtors and other entities. Its requests are focused on information regarding disposition of assets and transactions among the Debtors and those entities. Debtors admitted to making distributions to their shareholders, so examination of the shareholders is appropriate. As for Arsenal, Debtors allegedly testified at the § 341 meeting regarding Arsenal entities being listed as creditors of Resnovae.

Second, referring to the chart Debtors included in their Objection, the District points out that explanations proffered in a brief are just "generalized and unsupported statements of counsel[.]" Reply, ¶ 8. The District seeks information about the Pershing Account from supporting documents and examinations under oath, not from statements in a brief. Offers to produce some of the requested documentation, as in Exhibit B attached to the Objection, are not a substitute for a full examination.

Next, the District argues that no matter what statute of limitations period might apply in a future adversary proceeding, the Eastman Sale in 2010 and the 2012 Sale both relate to funds and

assets that exist or were recently transferred by Debtors. Finally, the District asserts that the benefits of the 2004 Motion outweigh any burdens on the Debtors or its shareholders.

### III. DISCUSSION

**A. Standard for a motion under Fed. R. Bankr. P. 2004**

**1. The scope of Rule 2004 inquiries is broad**

Fed. R. Bankr. P. 2004 allows "any party in interest"[1] to request that the bankruptcy court order "the examination of any entity." The examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Production of documents and the attendance of the entity for examination under Rule 2004 can be compelled by a subpoena. *See* Fed. R. Bankr. P. 2004(c).

The scope of a Rule 2004 examination is broad. *See In re Hope 7 Monroe St. Ltd. P'ship*, 743 F.3d 867, 874 (D.C. Cir. 2014). "Great latitude of inquiry is ordinarily permitted." *In re Handy Andy Home Improvement Ctrs., Inc.*, 199 B.R. 376, 379 (Bankr. N.D. Ill. 1996) (quotation omitted).

---

[1] At oral argument, the Debtors asserted that the District did not have standing to bring the 2004 Motion because it is not a creditor of each Debtor. Rule 2004 requests, however, are not limited to creditors. They are available to "any party in interest[.]" Although that term is not defined in the Bankruptcy Code,

> the Seventh Circuit has interpreted this term as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *Adair v. Sherman*, 230 F.3d 890, 894 n.3 (7th Cir. 2000); *Matter of FBN Food Servs., Inc.*, 82 F.3d 1387, 1391 (7th Cir. 1996). In accordance with general bankruptcy standing rule, that interest must be pecuniary…. Non-creditors may be deemed parties in interest if they demonstrate a stake in the outcome of a bankruptcy matter.

*In re Pantazelos*, No. 15 BK 08916, 2016 WL 2342905, at *2 (Bankr. N.D. Ill. Apr. 29, 2016) (citations omitted).

In light of the District's inclusion on the list of creditors filed in the Velsicol and Holdings cases (Case No. 23 B 12544, EOD 6; Case No. 23 B 12548, EOD 4), the District has standing to bring the 2004 Motion against Velsicol and Holdings. Moreover, the respondent to a motion under Rule 2004 need not be a debtor in bankruptcy. The District's standing to pursue the examinations of Resnovae and its shareholders stems from the allegations regarding distributions to those shareholders and the relationships among the Debtors and does not rise or fall based on whether the District holds a claim against Resnovae. In any event, the governmental bar date has not passed.

Some courts have held that the party seeking leave to take examinations under Rule 2004 "has the burden to show good cause for the examination it seeks[.]" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff*), Adv. Pro. No. 08-01789 (SMB), 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014). Others look to the plain language of Rule 2004.

> No "good cause" language is included in the Rule…. Rule 2004 is substantially a pre-litigation device for assessing whether grounds exist to commence an action. Thus, while civil discovery and bankruptcy investigation provisions seem parallel, they are not identical, and case law requiring a showing of "good cause" for the entry of a protective order under Fed. R. Civ. P. 26(c) is inapplicable to a Rule 2004 investigation.

*Handy Andy*, 199 B.R. at 380 (quotation omitted).

**2. Requests under Rule 2004 need only be relevant to the areas of investigation described in the Rule**

The Debtors contend that an inquiry under Rule 2004 "must have relevance." *In re Diocese of Buffalo, NY*, 655 B.R. 72, 75 (Bankr. W.D.N.Y. 2023). Unlike discovery under the Federal Rules of Civil Procedure, however, which must be "relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), inquiries under Rule 2004 need only be relevant to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate[.]" In a chapter 11 reorganization case, "the examination may also relate to the operation of any business … the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and … any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b). As the *Diocese of Buffalo* decision acknowledges, "Rule 2004 permits an appropriately comprehensive probe" into these issues. 655 B.R. at 75.

### B. The District's requests are relevant according to the standard set forth in Rule 2004

Shortly before the Debtors filed for relief under the Bankruptcy Code, Velsicol produced some financial documentation during discovery in a case pending in the Superior Court of the District of Columbia. The District seeks the opportunity to question the Debtors about that documentation and to obtain additional relevant documents. The District contends that these examinations and additional documents "may lead to potential assets and/or causes of action for the benefit of creditors." 2004 Motion, ¶ 20. The court agrees that the District's proposed examinations relate to the disposition of assets and transactions among the Debtors. Examination of the shareholders is appropriate because Debtors made distributions to them; questions about those distributions relate to the conduct and financial condition of the Debtors.

The Debtors raise objections and assert that the proposed examinations are outside the scope of Rule 2004 and that the District is simply using the Rule 2004 examinations to harass them. The Debtors argue that examinations of the shareholders are unnecessary because relevant information can be obtained from the Debtors.[2] Debtors also assert that the District has misinterpreted its financial documents, either through a lack of understanding or for a more nefarious reason. Debtors purport to explain why the District's grounds for inquiry, based on those documents, are incorrect.

#### 1. The court will not determine at this time whether the District's contentions plausibly allege a claim for relief

A motion for leave to take Rule 2004 examinations is not the time for a court to take a deep dive into the documents supporting the request, nor for the court to consider whose explanations of the documents are more plausible. As the District points out in its Reply,

---

[2] The District offered to question the Debtors' representatives first, and only take the examinations of shareholders as necessary.

"Debtors' *Counsel's* unverified answers in briefing are not a substitute for an examination of the Debtors themselves." Reply, ¶ 11. The Debtors' representatives can be asked about those documents at their examinations under oath, and the District can then decide whether those documents support a claim for relief. But to cut off the District at this juncture in the proceedings is essentially the equivalent of deciding a motion to dismiss in the Debtors' favor.

### 2. The court will not determine at this time whether the proposed subpoenas comply with Fed. R. Civ. P. 45

Debtors contend that the District has failed to assert any relevance for certain document requests, listing several examples in paragraph 32 of their Objection. To the extent the Debtors wish to object to particular questions or document requests, the court can address these objections when raised at the appropriate time in accordance with the applicable rules. As the court explained on January 3, 2024, these types of issues "are better resolved in the context of an actual dispute after the subpoenas are issued." Debtors' specific objections are not well-taken in the context of deciding whether to grant authority to take examinations and seek documents under Rule 2004.

Debtors argue that the document production is "essentially limitless," will impose a significant burden on them and their employees and is "not likely to produce information leading to any causes of action that are not otherwise barred by an applicable statute of limitations." Debtors attached to their Objection a list of documents that they agreed to produce. *See* Objection, Ex. B.

As stated above, a request under Rule 2004 is not the appropriate setting for the court to parse specific document requests and determine which are likely to produce relevant information and which are not.

> The rule contemplates only that the court may order the examination of any entity. That entity's cooperation in the examination process is then secured with a

9

subpoena, issued under Rule 45 of the Federal Rules of Civil Procedure. If the examinee thinks that the subpoena is inappropriate, it may take advantage of the procedures outlined there.

*In re Sheetz*, 452 B.R. 746, 748–49 (Bankr. N.D. Ind. 2011) (citations omitted).

### 3. Examinations and document requests need not produce evidence that supports the filing of an adversary proceeding in order to be relevant

The Debtors contend that the District's requests will not support a cause of action. That may in fact be true, but whether or not the document requests are likely to produce evidence relevant to a fraudulent conveyance action is not the standard for deciding a motion under Rule 2004. So long as the discovery requested under Rule 2004 relates to "the acts, conduct, or property[,] … the liabilities and financial condition of the debtor, … any matter which may affect the administration of the debtor's estate, or … any other matter relevant to the case or to the formulation of a plan" it is proper. The District may learn information that supports an objection to confirmation, for example, or that allows it to take a position on any number of issues that might arise in these chapter 11 cases.

### 4. The statute of limitations issue is premature

Since the question of whether the Rule 2004 requests will support a fraudulent conveyance claim is not outcome-determinative, the argument about whether the District is subject to a statute of limitations in such litigation is a red herring. Whether the doctrine of *nullum tempus* is applicable, or whether the DC Superior Court already ruled on this issue – neither are relevant to the analysis in which this court must engage to decide a motion under Rule 2004, because the District is not limited to using the information it gathers to file a fraudulent conveyance claim.

In fact, the two cases cited by Debtors in support of their *nullum tempus* argument support this point. *See Miller v. Fallas (In re J&M Sales, Inc.)*, Adv. No. 20-50775 (Bankr. D.

10

Del. Aug. 20, 2021); *Maxus Liquidating Trust v. YPF S.A.* (*In re Maxus Energy Corp.*), 641 B.R. 467, 546 (Bankr. D. Del. 2022). Neither the *J&M Sales* court nor the *Maxus* court were reviewing a motion for Rule 2004 exam. This is evident from the fact that both are adversary proceedings in which Rule 2004 is inapplicable. In the *J&M Sales* opinion, the court decided a motion to dismiss,[3] and the *Maxus* court ruled on a motion for summary judgment.

This court is mindful that non-bankruptcy litigation is pending between the parties, and that "Rule 2004 should not be used to obtain information for use in an unrelated case or proceeding pending before another tribunal." *Madoff*, 2014 WL 5486279, at *3 (quotation omitted). This limit may become pertinent if the court is asked to decide a motion brought under Fed. R. Civ. P. 45(d). However, Rule 2004 permits the District to examine these parties and to issue document requests. Its areas of investigation fall within the broad scope of the Rule, which allows discovery of "the acts, conduct, or property or … the liabilities and financial condition of the debtor, or … any matter which may affect the administration of the debtor's estate[.]"

C. **The court will grant the 2004 Motion with modifications to the requested relief**

Debtors conclude their Objection with a "reservation of rights," which with the court agrees. The court will grant the 2004 Motion, but Debtors and the other entities subject to examination will "retain the right to object to individual requests on all available grounds." Objection, ¶ 56.

Furthermore, paragraph 2 of the proposed order attached to the 2004 Motion provided that the District would be authorized to examine certain parties, related entities and individuals, "in accordance with the exhibits attached to the Motion[.]" The court will not include that

---

[3] Debtors also cited a more recent *J&S Sales* opinion. No. 18-11801 (JTD), 2022 WL 532721 (Bankr. D. Del. Feb. 22, 2022). This decision, in which the court denied plaintiff's motion for leave to amend his complaint, is no more relevant than the earlier one.

11

language in its ruling.  The court will grant the 2004 Motion and authorize examinations of the listed entities, including production of documents, but it is not authorizing those examinations or document productions in accordance with the attached exhibits.  To keep that language in the order would be to provide the imprimatur of court approval, without the safeguards available to a respondent in Fed. R. Civ. P. 45.  *See Sheetz*, 452 B.R. at 749 ("This process has the advantage of allowing the court to avoid the appearance of approving any details of the examination[.]").

As previously stated in court, Transportation Insurance Company, Continental Casualty Company, The Continental Insurance Company and Pharmacia, LLC may attend the examinations and ask questions that do not duplicate those asked by the District, but these entities do not have authority to issue document requests without filing their own motions under Rule 2004.

For all of the reasons stated above, **IT IS ORDERED THAT**:

1. The 2004 Motion is **GRANTED**; and

2. The District is authorized to examine the following parties, related entities and individuals pursuant to Fed. R. Bankr. P. 2004, including the production of documents: Velsicol Chemical LLC, Velsicol Chemical Holdings Corporation, Resnovae Holdings Corporation, Timothy Horn, Dennis T. Leu, Sherman Friedman, George Harvell, John Bonsor and Arsenal Capital Partners.

ENTERED:

Date:  February 23, 2024

DAVID D. CLEARY
United States Bankruptcy Judge