**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VELSICOL CHEMICAL LLC, et al. | ) | Case No 23-12544 |
| | ) | |
| Debtors.[1] | ) | Honorable David D Cleary |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: September 18, 2024** |
| | ) | **Hearing Time: 10:00 a.m.** |

**NOTICE OF MOTION**

TO:    See attached list

PLEASE TAKE NOTICE that on Wednesday, September 18, 2024 at 10:00 a.m., I will appear before the Honorable Judge David D. Cleary, or any judge sitting in that judge's place, **either** in courtroom 644 in the Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, Illinois, **or** electronically as described below, and present the **FIRST INTERIM FEE APPLICATION OF MUCH SHELIST P.C. AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD SEPTEMBER 21, 2023 THROUGH APRIL 30, 2024**, a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is **161 122 6457,** and the passcode is **Cleary644.**

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

---

[1] The Debtors in these Cases are Velsicol Chemical, LLC, Velsicol Chemical Holdings Corporation, and Resnovae Holdings Corp.

Date: August 28, 2024                         ***VELSICOL CHEMICAL, LLC, VELSICOL CHEMICAL HOLDINGS CORPORATION and RESNOVAE HOLDINGS CORP.***

                                  By:     */s/ Jeffrey M. Schwartz*
                                           One of Their Attorneys

Jeffrey M. Schwartz, (#6209982)
**MUCH SHELIST, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
Telephone: (312) 521-2000
Facsimile: (312) 521-3000
jschwartz@muchlaw.com

*Counsel to the Debtors*

2

# **CERTIFICATE OF SERVICE**

      I certify that on August 28, 2024, true copies of this notice and the attached application referred to therein were served via the CM/ECF system upon all parties entitled to receive electronic notice in this case.

By:    */s/ Jeffrey M. Schwartz*

**U.S. Trustee – Via ECF**
Patrick S Layng
Office of the U.S. Trustee, Region 11
219 S Dearborn St. Room 873
Chicago, IL 60604

**Subchapter V Trustee – Via ECF**
Matthew Brash
Newpoint Advisors Corporation
5600 N. River Road, Suite 800
Rosemont, IL 60018

**VIA ECF**
BMC Group, Inc.
Attn: T Feil
3732 W. 120th Street
Hawthorne, CA 90250

**VIA ECF**
Jonathan Friedland
Roberg Glantz
Jeffrey M. Schwartz
Much Shelist, P.C.
191 N Wacker Drive, Suite 1800
Chicago, IL 60606

**VIA ECF**
Jonathan Skrmetti
Attorney General and Reporter
Stuart Wilson-Patton
Senior Assistant Attorney General
Office of the Attorney General Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202-0207

**VIA ECF**
Kevin H. Morse
Joseph Archambeau
Clark Hill PLC
130 E. Randolph, Suite 3900
Chicago, IL 60601

BMC Group, Inc
tfeil@bmcgroup.com, evalles@bmcgroup.com,lruppaner@bmcgroup.com

Benjamin Blustein on behalf of Creditor District of Columbia
bblustein@lawmbg.com

Quinette Bonds on behalf of Creditor Pension Benefit Guaranty Corporation
bonds.quinette@pbgc.gov, efile@pbgc.gov

Matthew Brash
mbrash@newpointadvisors.us, I003@ecfcbis.com;jnoack@newpointadvisors.us

Eric J. Breithaupt on behalf of Creditor Pharmacia LLC
ebreithaupt@joneswalden.com, jwdistribution@joneswalden.com

Shantel Chapple Knowlton on behalf of Creditor District of Columbia
schappleknowlton@edelson.com

David C. Christian, II on behalf of Creditor Transportation Insurance Company
dchristian@dca.law

Scott D. Fink on behalf of Creditor TOYOTA INDUSTRIES COMMERCIAL FINANCE INC.
ecfnil@weltman.com

Leon Jones on behalf of Creditor Pharmacia LLC
ljones@joneswalden.com, jwdistribution@joneswalden.com

Kevin H Morse on behalf of Creditor District of Columbia
kmorse@clarkhill.com, blambert@clarkhill.com

Daniel Robertson on behalf of Creditor Pension Benefit Guaranty Corporation
robertson.daniel@pbgc.gov, efile@pbgc.gov

Jeffrey M Schwartz on behalf of Debtor 1 Resnovae Holdings Corporation
jschwartz@muchlaw.com,

Ryan Seidemann on behalf of Creditor State of Louisiana, Department of Environmental Quality
seidemannr@ag.state.la.us

Andrea Wong on behalf of Creditor Pension Benefit Guaranty Corporation
wong.andrea@pbgc.gov

TN Dept of Env't and Conservation
stuart.wilson-patton@ag.tn.gov

Michael K. Desmond on behalf of Chem-Dyne Site Trust
mdesmond@sgrlaw.com

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VELSICOL CHEMICAL LLC, et al. | ) | Case No 23-12544 |
| | ) | |
| Debtors.[2] | ) | Honorable David D Cleary |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: September 18, 2024** |
| | ) | **Hearing Time: 10:00 a.m.** |

**FIRST INTERIM FEE APPLICATION OF MUCH SHELIST P.C.
AS COUNSEL TO THE DEBTORS AND DEBTORS IN
POSSESSION, FOR THE PERIOD FROM SEPTEMBER 21, 2024
THROUGH AND INCLUDING APRIL 30, 2024**

Much Shelist, P.C. ("Much"), counsel to Velsicol Chemical, LLC, Velsicol Chemical Holdings Corporation and Resnovae Holdings Corp. (collectively, "Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby submits its first interim fee application (the "Application") for allowance of compensation for professional services provided in the amount of $454,822.00 and reimbursement of actual and necessary expenses in the amount of $6,104.00 that Much incurred for the period from September 21, 2023 through April 30, 2024 (the "Application Period"). In support of this Application, Much respectfully states as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to sections 1334 and 157(a) of title 28 of the United States Code and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding pursuant to section

---

[2] The Debtors in these Cases are Velsicol Chemical, LLC, Velsicol Chemical Holdings Corporation, and Resnovae Holdings Corp.

6

157(b)(2) of title 28 of the United States Code. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

2. The statutory predicates for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure, and Rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois.

## BACKGROUND

**A    Filing of the Chapter 11 Cases**

3. On September 21, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Debtors are managing their operations and financial affairs as debtors-in-possession.

**B.    The Debtors' Retention of Much**

4. On October 25, 2023, the Debtors filed an application to retain and employ Much as their attorneys in the Chapter 11 Cases [Docket No. 65] (the "Retention Application").

5. On November 1, 2023, the Court entered the Order Granting Application to Employ Much Shelist P.C. Retroactive to the Petition Date [Docket No. 77] (the "Retention Order").

## RELIEF REQUESTED

6. Much rendered services on behalf of the Debtors during the Application Period, for which Much seeks interim allowance of compensation and reimbursement of expenses. By this Application, Much seeks an order: (1) allowing Much $454,822.00 in compensation and $6,104.00 in reimbursable expenses for the Application Period as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code, and (2) authorizing payment of such allowed amounts to Much.

7

7. Much performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

8. Much has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these Chapter 11 Cases.

9. Pursuant to Bankruptcy Rule 2016(b), Much has not shared, nor has Much agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Much or (b) any compensation another person or party has received or may receive.

10. Much has voluntarily written off $45,107.00 in time, which is not part of this Application.

11. During the time period covered by this Application, the hourly rates of some of the individuals who provided services changed as Much adjusted its hourly rates in the ordinary course of its business on an annual basis.

## DISCUSSION

12. Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court may award . . . reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . . In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

13. The Seventh Circuit Court of Appeals has stated that:

8

> The computation of hourly fees depends on the number of hours "reasonably" expended, the hourly rate of each [professional], the calculation of the time value of money (to account for delay in payment), potential increases and decreases to account for risk and the results obtained, and a complex of other considerations under the heading of "billing judgment."

*Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). Additionally, other courts of appeal have recognized that:

> [I]t is important for the court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation. It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that [the client] would not have enjoyed the success it did had its counsel managed matters differently.

*Boston and Main Corp. v. Moore*, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted)

14. In reviewing the Application, the Court should be guided by the Seventh Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

> [I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.

*In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992); *see Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984) (section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts. . . . Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts.")

15. In *Continental Securities*, the Seventh Circuit found error in the lower court's practice of: (a) placing ceilings on the hourly rates of all lawyers; (b) refusing to allow paralegal services to be compensated at market rate; (c) refusing to award a risk multiplier; (d) making large across-the-board cuts in research time; (e) making large across-the-board cuts in conference time;

9

and (f) refusing to allow attorneys to bill computerized legal research services (e.g., LEXIS). *Continental Illinois Securities Litigation*, 962 F.2d at 568-70.

16. In evaluating the Application, the Court should consider the novelty and difficulty of the issues presented, the skill required to perform the legal services properly, the preclusion of other employment caused by Much's retention in these cases, the customary fees charged in similar cases, the existence of time limits under which the services were rendered, the results obtained, the experience and ability of the attorneys involved, and the amount of awards of compensation in similar cases. *See In re Alberto*, 121 B.R. 531, 534 (Bankr. N.D. Ill. 1990).

17. Much is entitled to receive interim compensation in the amount of $454,822.00 for services rendered during the Application Period and $6,104.00 for reimbursement of expenses incurred during the Application Period. The following is a summary of time expended, by individual, during the Application Period.

| Timekeeper | Year of Illinois Bar Admission | Hours | Rate/hr. | Total |
|---|---|---|---|---|
| David A. Alman (partner) | 1997 | 10.8<br>7.9 | $605.00<br>$635.00 | $6,534.00<br>$5,016.50 |
| Steven P. Blonder (partner) | 1993 | 29.1<br>81.0 | $720.00<br>$755.00 | $20,952.00<br>$61,155.00 |
| Laura Elkayam (partner) | 2010 | 27.8 | $480.00 | $13,344.00 |
| Jonathan P. Friedland (partner) | 1999 | 33.2<br>12.9 | $685.00<br>$720.00 | $22,742.00<br>$9,288.00 |
| Robert W. Glantz (partner) | 1989 | 33.8<br>15.9 | $670.00<br>$705.00 | $22,646.00<br>$11,209.50 |
| Cecilia Grabowski (project assistant) | N/A | 21.8<br>1.2 | $205.00<br>$215.00 | $4,469.00<br>$258.00 |
| Anthony Hernandez (paralegal) | N/A | 21.3<br>7.7 | $290.00<br>$305.00 | $6,177.00<br>$2,348.50 |
| Hajar Jouglaf (associate) | 2018 | 3.5<br>.5 | $410.00<br>$430.00 | $1,435.00<br>$215.00 |
| Jeffrey L London (partner) | 1985 | 4.7<br>.4 | $645.00<br>$675.00 | $3,031.50<br>$270.00 |
| Joanne Sarasin (partner) | 1985 | 11.4 | $605.00 | $6,897.00 |

|  |  | 38.3 | $635.00 | $24,320.50 |
| --- | --- | --- | --- | --- |
| Jeffrey M. Schwartz (partner) | 1992 | 180.2 | $685.00 | $123,437.00 |
|  |  | 141.3 | $720.00 | $101,736.00 |
| Ed Walsh (partner) | 1983 | 5.8 | $635.00 | $3,683.00 |
|  |  | 5.5 | $665.00 | $3,657.50 |
| **TOTAL** |  | **696.0** |  | **$454,822.00** |

18. Much established the following project codes with distinct task categories for its professionals to classify their time entries: (1) Magnetek Insurance Litigation Issues, (2) Executory Contracts and Leases, (3) Business Operations, (4) Case Administration, (5) Claims Administration, (6) Employee Issues and Pensions, (7) Retention of Professionals, (8) Litigation Issues (9) Creditor Meeting and Communications, (10) Plan of Reorganization, (11) Environmental/Real Estate Issues, (12) Automatic Stay Issues, (13) Reporting Requirements and (14) Expenses.

19. Attached hereto as Exhibits 1-13 is a statement of legal services rendered for each task billing category. The services for each category are listed chronologically. The services were rendered in connection with and in furtherance of assisting the Debtors in the performance of his duties as delineated by Section 704 of the Bankruptcy Code. This Application complies with the standards enunciated in <u>In re Continental Securities Litigation</u>; 572 F. Supp. 931 (N.D. Ill. 1983) <u>modified</u> 692 F.2d 766 (7th Cir. 1992).

A. **Magnetek Insurance Litigation Issues (Exhibit 1):** Much expended 13.0 hours at a cost of $9,468.50 related to Magnetek insurance litigation issues. This category includes time spent by Much attorneys relating to certain prepetition litigation which involves alleged contamination from products used by a pre-1986 sister company of Velsicol that Velsicol is alleged to be contractually obligated to address by virtue of certain insurance contracts and indemnities. This category also includes issues relating to certain prepetition insurance settlement agreements, including discussions with counsel for the insurance companies.

11

B. **Executory Contracts and Leases (Exhibit 2)**: Much expended 9.5 hours at a cost of $6,763.00 in connection with executory leases and contracts. This category includes time spent by Much analyzing executory contract issues, drafting and presenting a motion to extent the time to assume or reject a real property lease related to Velsicol's corporate headquarters, communications with Velsicol's landlord regarding consensual order on additional time to assume lease, review of certain contracts and consultation with the Debtors regarding their executory contracts and lease issues.

C. **Business Operations (Exhibit 3)**: Much expended 37.2 hours at a cost of $24,437.00 in connection with business operation issues. This category includes time spent by Much consulting with and handling business issues, such as negotiating and drafting new business agreements (including distribution agreements) with third parties, advising on vendor issues, addressing day to day banking issues, advising on opening new accounts at approved financial depositories, including discussions with the US Trustee's office regarding the same, changing the Debtors' investments in such accounts, and providing input regarding document storage issues, insurance issues and post petition vendor issues.

D. **Case Administration (Exhibit 4)**: Much expended 105 hours at a cost of $72,883.50 relating to the administration of the Debtors' cases during the Application Period. Time in this category includes services relating to the filing of the Debtors' chapter 11 petitions and various "first day" motions, the Declaration of Tim Horn and other court documents and related notices during the initial days of these chapter 11 cases, including (a) reviewing and revising the Debtors' petitions and "first day" motions, proposed orders, affidavits, and notices; (b) preparing for the "first day" hearing, including drafting hearing notes and preparing a potential witnesses in connection with certain of the "first day" motions; and (c) discussions with the US Trustee's office

and SubChapter V trustee regarding comments and changes to various "first day" motions and orders.

Specifically, the Debtors filed and prosecuted motions seeking "first day" orders necessary to transition their operations into chapter 11 and to facilitate the administration of these chapter 11 estates. Among other things, these orders authorized the Debtors to (i) pay certain vendors, suppliers, and lien claimants; (ii) pay certain prepetition employee wages and benefits; (iii) maintain cash management systems; (iv) use prepetition bank accounts, checks, and other business forms; and (v) to jointly administer these cases.

This category also includes time spent for tasks that were necessary to ensure the efficient and smooth administration of legal services related to the Debtors' chapter 11 cases. These services included reviewing the notice of commencement of the case, preparing additional motions, attending hearings on various motions and applications, including motion to extend time to file schedules and statements of financial affairs, a motion to provide adequate assurances to utilities, and coordinating creditor list issues with the clerk of the court. Time is this category also relates to motions to employ professionals, motions to extend time to assume or reject leases, coordinating with the SubChapter V trustee, drafting and presenting the SubChapter V status report, participating in periodic status conferences among the Debtors' attorneys and, as necessary, other professionals in these chapter 11 cases, to ensure the efficient administration of these chapter 11 cases and participating in status conference with the Debtors and advising the Debtors as to various administrative issues in the cases.

**E. Claims Administration (Exhibit 5)**: Much expended 44.1 hours at a cost of $29,346.50 in connection with issues related to claims administration. This category includes time spent researching, drafting, and revising filings related to establishing a claims bar date, discussion with the US Trustee's office regarding the bar date order, reviewing and revising the bar date order,

13

drafting and coordinating publication notices, reviewing and analyzing proofs of claim filed in the Debtors' cases and analyzing contingent claim and claim valuation issues.

F. **Employee Issues and Pensions (Exhibit 6)**: Much expended 12.5 hours at a cost of $8,461.50 in connection with issues relating to employee benefits and pensions. This category includes time spent by Much advising the Debtors regarding pension issues, participating in numerous discussions and negotiations with the PBGC regarding the Plan and pension audit issues and responding to PBGC document requests.

G. **Retention of Professionals (Exhibit 7)**: A total of 31.8 hours at a cost of $21,963.50 was expended by Much's attorneys on the negotiation, preparation and appearance in Court on: (i) an application to retain BMC as claims agent; (ii) an application to retain Much as counsel to the Debtors; and (iii) an application to retain B. Riley as the Debtor's financial advisor. In addition, Much drafted a motion to employ certain ordinary course professional but after obtaining necessary information and consultation with the US Trustee's office decided such motion was not necessary.

H. **Litigation Issues (Exhibit 8)**: Much expended 190.9 hours at a cost of $124,063.50 related to litigation issues. This category includes time regarding the District of Columbia's Motion for Rule 2004 Examination of the Debtors and Related Entities and Individuals (the "2004 Motion"). Much attorneys spent time reviewing and analyzing the 2004 Motion and the attached notices of depositions, a supplemental memorandum and revised notices of depositions, research, drafting and objecting to the 2004 Motion, review of a reply filed by the DC, negotiating with DC over the scope of the discovery, and preparing for and attending hearings on the 2004 Motion. Time in this category also included reviewing the Courts order regarding the 2004 Motion as well as numerous discussions with the Debtors regarding the production of documents. Much attorneys also spent time researching legal issues raised in the 2004 Motion,

including novel arguments regarding statute of limitations and spent time analyzing factual issues raised in the 2004 Motion and responding to those issues. Time was also spent coordinating and preparing the document production, responding to the document requests, address confidentiality issues, producing documents through the DISCO system, supplemental productions and coordinating with the Debtors. In addition, time was spent preparing the Debtors representative for the 2004 exam.

      I. **Creditor Meeting and Communications (Exhibit 9):** Much expended 35.9 hours at a cost of $25,018.50 communicating with creditors. Time in this category consisted of (i) preparing the Debtors' representative for the 341 meeting, coordinating with the US Trustee's office and providing additional information in response to the US Trustee's office's requests prior to the 341 meeting, and attending the 341 meeting; (ii) discussions with the SubChapter V trustee regarding status of the case; and (iii) responding to creditor inquiries.

      J. **Plan of Reorganization (Exhibit 10):** Much expended 96.5 hours at a cost of $67,461.50 in connection with the Plan of Reorganization category. This Category includes time spent analyzing, preparing and drafting the Debtors' SubChapter V Joint Plan of Reorganization Dated December 20, 2023 (the "Plan"). Much worked closely with the Debtors and their financial advisors in formulating the Plan. Much also consulted with the SubChapter V Trustee regarding the Plan and treatment of creditors. Time was also spent (i) analyzing issues related to the liquidation analysis and projections included in the Plan; (ii) researching certain Plan issues; and (iii) analyzing certain creditor treatment under the Plan.

      K. **Environmental/Real Estate Issues (Exhibit 11):** Much expended 38.4 hours at a cost of $26,807.50 in connection with environmental and real estate issues. This category includes time spent by Much advising the Debtors regarding environmental issues, including lawsuits, consents decrees, PRP agreements, discussions and negotiations with the US EPA and advising

15

the Debtors regarding certain issues raised by the Tennessee Department of Environment & Conservation.

L. **Automatic Stay Issues (Exhibit 12)**: Much expended 6.1 hours at a cost of $4,381.50 in connection with issues related to the automatic stay. This category includes time spent by Much with respect to automatic stay issues relating to certain pending litigation and automatic stay issues relating to the newly filed complaints, including drafting a letter to plaintiff's counsel regarding violations of the automatic stay with respect to certain litigation against the Debtors filed postpetition for claims that arose prior to the Petition Date.

M. **Reporting Requirements (Exhibit 13)**: Much expended 75.1 hours at a cost of $33,766.00 in connection with reporting requirements including assisting the Debtors with filing the bankruptcy petitions and related documents, including creditor matrixes. This category also includes time spent by Much providing services related to advising the Debtors, and B. Riley in connection with the preparation, review, revision and filing, of the Debtors' schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements"). Moreover, Much attorneys advised the Debtors regarding drafting the Schedules and Statements, attended conferences with the Debtors and their advisors regarding the same, and conferred and corresponded with the Debtors and the Debtors' other professionals regarding the monthly operating reports and filing such reports for each of the Debtors; and assisting the Debtors with respect to other reporting requirements and communication with the US Trustee's office. Although a relatively small business today, the Debtors have been in business for some time, have operated in a highly regulated and complex business environment, and have complex environmental legacy liabilities.

## REASONABLE EXPENSES INCURRED

19. Expenses during the Application Period totaling $6,104.00 were incurred in the following category:

   (a) Filing Fees: Much incurred expenses totaling $5,214.00 as filing fees to file the Debtors' Chapter 11 cases. Much holds a retainer in the amount of $5,214.00 for the filing fees and seeks authority to apply the retainer to cover these costs; and

   (b) E-Discovery Data Charges totaling $890 relating to the use of DISCO document production software for the DC 2004 Exam production.

20. Much's expense records for this category are attached hereto and incorporated herein as Exhibit 14. All expenses incurred were ordinary and necessary expenses.

21. All expenses billed to the Debtors were billed in the same manner as Much bills to non-bankruptcy clients.

## BENEFIT TO THE ESTATES

22. Much has remained active on all matters in its representation of the Debtors as counsel during these cases. Much submits that the services set forth herein benefitted the estates and their creditors by ensuring that the Debtors' assets were properly preserved and administered, and that they gained the highest value under the circumstances to maximize the potential recovery for general unsecured creditors

## NOTICE

23. Twenty-one days' notice of this Application has been provided to (i) the U.S. Trustee; (ii) the Subchapter V Trustee; and (iii) any party that has appeared or requested notice in these Cases.

**WHEREFORE**, Much Shelist, P.C., respectfully requests that the Court enter an order:

(a) allowing Much, on an interim basis, $454,822.00 in compensation for the Application Period as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(b) allowing Much, on an interim basis, $6,104.00 in reimbursable expenses for the Application Period as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code and allowing Much to apply its retainer in the amount of $5,214.00 to these fees;

(c) authorizing the Debtors to pay Much $454,822.00 in compensation and $$6,104.00 (less the retainer of $5,214.00) in reimbursable expenses incurred during the Application Period; and

(d) granting such other and further relief as the Court deems just and proper.

Dated August 28, 2024

                                        **Much Shelist, P.C.**

                                        By:   */s/ Jeffrey M. Schwartz*
                                                   One of Its Attorneys

Jeffrey M. Schwartz
**Much Shelist, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Telephone: 312.521.2000
ARDC No. 6209982
jschwartz@muchlaw.com